IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| STANLEY W. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:10CV1037-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

This is the plaintiff's second case before this court. Jackson filed applications for

disability insurance benefits and supplemental security income on March 2, 2005,

alleging disability since October 1, 2004. After an unfavorable administrative decision,

he had a hearing before an ALJ who rendered an unfavorable decision on March 28,

2007. After the Appeals Council denied review, Jackson appealed to this court which

remanded the case to the Commissioner on November 10, 2008. *Jackson v. Astrue, ----*

F.Supp.2d, ----, 2008 WL 4853652 (M.D.Ala. 2008). Following the Appeals Council's

remand of the case, an ALJ held a hearing and issued an unfavorable decision on

September 2009. On October 8, 2010, the Appeals Council denied Jackson's request for

review. The ALJ's decision consequently became the final decision of the Commissioner

of Social Security (Commissioner).[1]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).[2]  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[3] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

[1]Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2]Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.

[3]A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of
> "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).  The court "may not decide the facts anew, reweigh the evidence, or substitute  . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must, however,] . . . scrutinize the record in its entirety to
> determine the reasonableness of the [Commissioner's] . . . factual findings .

---

[4]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

. . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction.**  The plaintiff was 49 years old at the time of the hearing before the ALJ.  He completed the 9th grade in special education.  The plaintiff's prior work experience includes work as a cook and a dumper.  He has worked mostly as a laborer, last working for 18 months ending in 2009.[5]  (R. at 502)  Following the administrative hearing, the ALJ concluded that the plaintiff has severe impairments of diabetes mellitus, hypertension, and left shoulder arthritis with pain.  (R. at 353).  Nonetheless, the ALJ concluded that the plaintiff was not disabled because the plaintiff has the residual functional capacity to perform work. (R. at 359)

**B.  The Plaintiff's Claims.**  The plaintiff presents five claims for review by the court.  The court will consider each claim, combining its discussion of the second and third claims.  As stated by the plaintiff the claims are

1.  Whether the ALJ Failed to Properly Consider Mr. Jackson's Complaints of Frequent Urination.
2.  Whether the ALJ Erred by Substituting Her Opinion for That of a Physician.
3.  Whether the ALJ Erred by Failing to Recontact Dr. Sewell.
4.  Whether the ALJ Erred by Failing to Properly Consider Mr. Jackson's Back Impairments.
5.  Whether the ALJ Erred by Failing to Properly Consider Mr. Jackson's Inability

---

[5]This work did not meet the requirements for substantial gainful employment.

4

to Afford Treatment.

## IV.  Discussion

**A.  The Frequent Urination Claim.**  In her opinion, the ALJ states that "the claimant has alleged needing excessive bathroom breaks; however, the objective record fails to indicate that the claimant sought treatment for this or even discussed the problem with a physician." (R. at 355)  The plaintiff contends this finding is contradicted by the record, and the Commissioner agrees.  The administrative record does reflect that on three separate occasions over the course of approximately 3 and one-half years the plaintiff sought medical care and as one of his complaints indicated that he had frequent urination. On April 22, 2005, the plaintiff was admitted to the Intensive Care Unit of Flowers Hospital in Dothan, Alabama for treatment of new onset diabetes.  (R. 210, 212, 215, 219)  On August 16, 2006, the plaintiff was seen at PrimeCare of Dothan where in the course of treating the plaintiff for diabetes, the physician noted that the plaintiff complained also of frequent urination.  (R. at 255, 277)  On November 17, 2008, the plaintiff was seen in the emergency room of Flowers Hospital with a chief complaint of dizziness. "Pt states that his sugars have been running high for a month, also polyuria/polydypsia and dizzy."  (R. at 427)  The physician's clinical impression at that time was "Essential Hypertension" and "Uncontrolled Diabetes Mellitus."  (R. at 427-28) The medical records from that visit also states, "Pt c/o polyuria, new in onset approx 1 week ago."  (R. at 429).

During the hearing before the ALJ, the plaintiff testified about his diabetes.  "It's mostly basically an everyday thing.  You know, you get up, you don't have no kind of energy.  And you get up, you be dizzy, nauseated, and that's mostly through all the day.  And mostly going to the bathroom constantly." (R. at 508)

The plaintiff's argument treats the need for frequent urination as a separate impairment, but the evidence shows and, as the plaintiff indicates above, that problem is a symptom of diabetes.  With regard to the plaintiff's diabetes, this is what the ALJ found.

> While the claimant has experienced some difficulty obtaining control of his diabetes, there is no evidence that he has experienced ongoing lack of control of the condition or would be unable to achieve control with the proper and regular use of medications. The claimant has not received a firm diagnosis of neuropathy related to his diabetes, and there is no evidence of any other complications as a result of uncontrolled diabetes.  The undersigned finds that the claimant's diabetes mellitus has not yielded disabling or debilitating symptoms or limitations to the claimant and would not preclude his performance of work activity.

(R. at 356)

In addition, regarding the plaintiff's general credibility, the ALJ stated, "In assessing the record as it relates to his general credibility, the undersigned cannot ignore the claimant's admission at his hearing that he last worked full-time for a period of 18 months as a laborer (requiring medium exertion), with his last work day being May 9, 2009." (R. at 355)

Based on the court's review of the record, the court concludes that any error of the ALJ concerning the plaintiff's contention regarding frequent urination was harmless.

Over the course of the three and one-half year period, the plaintiff complained about that problem to a physician only three times, and he never specifically sought treatment for it. Rather, that problem was always identified as one of other complaints associated with his diabetes and never as his chief complaint.  During part of the time when the plaintiff alleged this problem existed, he was able to hold down a full-time job.  And, as the ALJ found, it appears that for the majority of the time since the plaintiff's diabetes was diagnosed, it was under reasonable control.  In short, the substantial evidence supports a conclusion that this condition does not preclude him from working.

**B.  The Claims Related to Diabetic Neuropathy.**  The court will consider the second and third issues together because both relate to the existence and nature of the plaintiff's diabetic neuropathy.  The plaintiff contends that the ALJ erred in concluding that the plaintiff "has not received a firm diagnosis of neuropathy" (R. 356)   Specifically, the plaintiff contends that the ALJ should have credited the opinion of Dr. Sewell, his treating physician, who wrote on February 9, 2007, that the plaintiff "has diabetic neuropathy causing chronic pain in his legs and feet.  This condition is interfering with daily activities and sleep." (R. at 293) In a residual functional capacity questionnaire, Dr. Sewell again states that the plaintiff has pain and numbness in his legs and feet. (R. at 295)  Following a consultant examination in 2005, the physician concluded that the plaintiff has "[p]ossible diabetic neuropathy due to decreased sensation to light touch on the feet." (R. at 230)

7

It is not at all clear what the ALJ meant when she said that the plaintiff had not received a "firm diagnosis."  And if that were all the ALJ had said about the neuropathy, the plaintiff might have been entitled to relief, but the ALJ said more:

> In a physical residual functional capacity questionnaire completed on February 21, 2007, Dr. Swell cited the claimant's diagnoses to include hypertension, diabetes mellitus, and diabetic neuropathy of the legs and feet. Dr. Swell documented the claimant's pain and numbness to the legs and feet, but indicated that he had a good prognosis. The undersigned points out that Dr. Swell's opinion as to the claimant's good prognosis regarding symptoms related to his diabetes is contradictory in nature to his statement made several days earlier that symptoms interfere with the performance of his daily activities and sleep. According to Dr. Swell, the claimant's pain and other symptoms were occasionally severe enough to interfere with the attention and concentration needed to perform even simple work tasks. This statement is also contradictory in nature to a finding of a good prognosis. The undersigned finds nothing in Dr. Swell's treatment notations to support a conclusion that symptoms were even occasionally severe enough to interfere with attention and concentration. Further, the claimant returned to work full-time in 2008 and was able to perform the work-related requirements of that job, including concentration, for the following 1½ years. According to the claimant's earnings record, he also performed work activity in 2007, earning $7,847.50. Dr. Swell did not complete the other physical capacity evaluation of record because he stated that the claimant might need a functional assessment and did not feel comfortable assigning limitations. The admission by Dr. Swell in February 2007 that he did not feel comfortable assigning functional limitations for the claimant undermines the credibility of the other statements he made in February 2007, in that it calls into question his confidence in personally drawing conclusions about the extent of the claimant's capabilities and limitations.

(R. at 357)

> Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a

contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir.2004). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id.* at 1240-41.

*Winschel v. Commissioner Of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011).

The ALJ concluded that Jackson's diabetes "has not yielded disabling or debilitating symptoms or limitation . . . and would not preclude his performance of work activity." (R. at 356)  There is substantial evidence to support that conclusion. Moreover, the ALJ's rejection of Dr. Sewell's opinion is consistent with the law's requirements.  She considered his treatment notes and other evidence which shows that the plaintiff can perform work.  The ALJ reached that conclusion by considering the evidence, not by substituting her judgment for that of the physicians.  Finally, after carefully considering the issue, the court concludes that neither the regulations nor the law required the ALJ to seek further information from Dr. Sewell because an adequate basis existed in the record for determining if Jackson was disabled.

**C.  The Back Impairment.**  The plaintiff argues that the ALJ erred in finding that his back impairment was not severe.  The ALJ found that the plaintiff's only severe impairments were "diabetes mellitus, hypertension, and left shoulder arthritis with pain." (R. at 353) However, the ALJ did not fail to consider the plaintiff's back problems, and this is what she said about it.

The claimant has alleged back problems, and the undersigned notes that, in November 2008, the claimant presented to the emergency room after having

had a motor vehicle accident and injury to the left shoulder and lower back. Lumbar spine imaging disclosed an impression of lumbar spondylosis, but disclosed a transitional vertebral body, an L4-5 level at the level of the iliac crest, mild loss of disc space at the L5-S I level, and a small anterior osteophyte formation in the mid and distal lumbar spine. The remainder of the intervertebral disc spaces were well preserved and there was no fracture or subluxation. The claimant received a clinical impression with respect to the emergency room presentation that included lumbar strain. In April 2005, the claimant presented for a disability evaluation with Dr. Ellis and reported problems with his back. After conducting a thorough physical examination, Dr. Ellis's diagnoses included pain in several locations (including the back with some symptoms of radiculopathy and pain going down his left leg). After review of the objective record, the undersigned notes that the claimant's assessments related to complaints of back pain have included lumbar strain and back pain only. There is no evidence that the claimant obtained regular treatment for back complaints or experienced persistent symptoms or clinical signs associated with an ongoing back problem. In fact, the claimant testified that he was not being treated for back pain. The undersigned finds that the claimant has no documented severe impairment related to his back.

(R. at 354)

The plaintiff testified at hearing that he was not specifically being "treated for anything for . . . [his] back pain." (R. at 507) He takes only over-the-counter medications. (R. at 507-08)   The conclusion of the ALJ is supported by substantial evidence including, as noted, the testimony of the plaintiff.

**D. Ability to Afford Treatment.**  The plaintiff contends that the ALJ erred by discrediting his testimony on the following basis.

The undersigned finds no evidence of record supporting a finding that the claimant's impairments would be resistant to either alleviation or control with the proper and regular use of the appropriate prescription medications, as well as adherence to conservative treatment measures and modalities. As previously suggested, while there has been some difficulty with control of

conditions documented in the record from time to time, there is no evidence that all prescription medication options have been exhausted without success. Notations from Dr. Sewell from December 2005 indicated that one of the claimant's prescriptions was being provided to him free of charge under Abbott Laboratories Patient Assistance Program. The record documented several telephone calls to Dr. Sewell for refills. The record contains no evidence of the claimant's ongoing difficulties with side effects of medication. The undersigned concludes that the claimant's ability to engage in activities of daily living, including the performance of work activity (while not at the SGA level on a continuous basis throughout the period for consideration), is persuasive evidence that the claimant's alleged symptoms resulting from his impairments are not totally disabling. The undersigned additionally notes that the claimant's activities of daily living are typical and normal and not indicative of an individual suffering from debilitating symptomatology. The undersigned further notes that the claimant's clinical examination findings have often been found to be normal or minimally abnormal, and the objective diagnostic evidence of record has been sparse.

(R. at 358)

Unquestionably, poverty excuses noncompliance with prescribed medical treatment which would alleviate a claimant's symptoms. *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988). The Eleventh Circuit has held additionally that an "ALJ must consider whether the claimant is able to afford the medical care." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir.2003). However, if the ALJ does not place great emphasis on the lack of subsequent medical treatment, then the ALJ's failure to consider the inability to pay for medical treatment is non-reversible error. *Id.*

The above quoted section of the ALJ's opinion in this case shows that the ALJ did not exclusively rely on Jackson's failure to secure treatment as a reason for discrediting him or for finding that he was not disabled. Indeed, the ALJ noted Jackson's activities of

11

daily living, the clinical findings of record and record of working as reasons for her findings.  Any *Dawkins* error was non-reversible.

For the foregoing reasons, the court concludes that the decision of the Commissioner is due to be affirmed.  A separate final judgment will be entered.

Done this 9th day of December, 2011.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE